**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**MARNIE OSBORNE**                                                                               **PLAINTIFF**

**v.**                              **CASE NO. 4:08CV000250 BSM**

**FARMERS NEW WORLD LIFE
INSURANCE COMPANY**                                                                **DEFENDANT**

**ORDER**

Pending before the court are defendant's motion for summary judgment [Doc. No. 8] and plaintiff's cross motion for summary judgment [Doc. No. 17]. For the reasons stated below, the defendant's motion for summary judgment [Doc. No. 8] is granted in part and denied in part; and the plaintiff's cross-motion for summary judgment [Doc. No. 17] is denied.

I. UNDISPUTED FACTS

The undisputed facts are as follows. In early April 2007, plaintiff's husband James Preston Osborne was first diagnosed with Post Traumatic Stress Disorder (PTSD) by his primary care physician. On April 16, 2007, Mr. Osborne was hospitalized due to his PTSD and symptoms associated with psychosis. Prior to being hospitalized, he suffered from nightmares and heard voices that were telling him to hurt his family. He was also experiencing self-induced insomnia due to his use of caffeine and cigarettes. His medical records reveal that Mr. Osborne first showed signs of psychosis at the age of twenty. While hospitalized, Mr. Osborne was again diagnosed with PTSD. He was prescribed Klonopin to

treat his sleep disorder, Citalopram Hydrobromide to treat his PTSD, and Risperidone for his hallucinations. He was discharged on April 20, 2007. [Medical Records p. 80.]

Due to visual hallucinations and threatening behavior, Mr. Osborne was hospitalized again on April 22, 2007. He was again prescribed Klonopin, Citalopram Hydrobromide, and Risperidone. He was discharged on April 27, 2007.

Following his discharge from the hospital, Mr. Osborne applied for a $50,000 Simple Term Twenty Year Life Insurance Policy with defendant Farmers New World Life Insurance Company (Farmers) on May 23, 2007. He designated his wife as the primary beneficiary. On the application, Mr. Osborne indicated that, in the past seven years, he had not consulted "a physician or other healthcare provider(s), or been treated or hospitalized or taken medication for . . . any mental or nervous disorders, including depression or anxiety." He also indicated that he had not used Tobacco or Nicotine within the past twelve months. Prior to signing the application, he reviewed the application with his wife. In the application he certified that to the best of his knowledge and belief that the statements and answers to the questions in the application were true and complete. Based on Mr. Osborne's statements in the application, Farmers issued a policy to Mr. Osborne the following day.

Mr. Osborne died on June 8, 2007. His death certificate lists the cause of death as unknown but that conditions contributing to his death include, among other things, his PTSD. Following her husband's death, Mrs. Osborne executed a claim for benefits and a Health Insurance Portability and Accountability Act (HIPPA) Medical Authorization Release. On

July 24, 2007, she made a statement to a Farmers's representative in which she indicated that her husband died from sleep apnea, hypertension, chronic hip and neck pain, and PTSD. She also indicated that her husband was first diagnosed with PTSD in mid-April 2007 and that his April 22, 2007 hospitalization was due to his PTSD. After reviewing Mr. Osborne's medical records, Farmers concluded that, had Mr. Osborne answered truthfully, his application would have been declined. On or about October 30, 2007, Mrs. Osborne received a letter from Farmers denying her claim.

Mrs. Osborne commenced the present cause action against Farmers in the Faulkner County, Arkansas, Circuit Court, on March 6, 2008. She seeks compensatory and punitive damages. In her complaint she alleges breach of contract, negligence, and bad faith. On March 26, 2008, pursuant to 28 U.S.C. § 1441, Farmers had the case removed to this court based on complete diversity of citizenship and the amount in controversy exceeding $75,000.

Farmers has filed a motion for summary judgment in which it alleges that, because Mr. Osborne misrepresented his true medical condition, it had a right to rescind the policy and deny payment. Farmers also alleges that there is no evidence to support Mrs. Osborne's bad faith and negligence claims. In her cross-motion for summary judgment, Mrs. Osborne alleges that Farmers cannot meet its burden of proving a causal relationship between the alleged misrepresentations made in the policy and Mr. Osborne's cause of death and that Farmers cannot and has not put forth any competent evidence as to Mr. Osborne's cause of death.

II.  STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact suitable for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, *247, 106 S. Ct. 2505, **2509-10 (1986); *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, *1541 (8th Cir. 1996); *Unlaub Co., Inc. v. Sexton*, 568 F.2d 72, *76 (8th Cir. 1977); *Camden County Council on Econ. Opportunity v. U.S. Dep't of Health & Human Servs.*, 563 F. Supp. 2d 262, *265 (D.D.C. 2008); *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 529 F. Supp. 2d 1110, *1117 (N.D. Cal. 2007).  A genuine issue of material fact exists if there is a dispute about a fact material to the outcome of the case, and the dispute is genuine in that a reasonable jury could return a verdict for either party.  *Jones v. MN Dep't of Corr.*, 512 F.3d 478, *480 (8th Cir. 2008); *see American Fed'n of State, County, & Mun. Employees v. City of Benton, Ark.*, 513 F.3d 874, *878 (8th Cir. 2008); *Minder v. Local 373*, 513 F.3d 854, *860 (8th Cir. 2008).   When both sides have moved for summary judgment there are no facts in dispute. *Computer Aided Design Sys., Inc. v. Safeco Life Ins. Co.*, 235 F. Supp. 2d 1052, *1056-57 (S.D. Iowa 2002)

III.  DISCUSSION

A.       Arkansas Code Ann. § 23-79-107

Farmers asserts that it properly denied Mrs. Osborne's claim for benefits because of

Mr. Osborne's incorrect statements on his policy application. In the alternative, Farmers states that should the court find that the statements are not misrepresentations, it should find that the statements constitute incorrect statements under the law that would support rescission of the policy.

Mrs. Osborne concedes that her husband's statements in the insurance application are not accurate. She argues, however, that before being entitled to judgment in its favor, Farmers must establish a causal relationship between the misrepresentations in the application and the cause of her husband's death.

Arkansas Code Annotated section 23-79-107(a) (Repl. 2004) provides:

(a) All statements in any application for a life or accident and health insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

> (1) Fraudulent;
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> (3) The insurer in good faith would not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

* * *

(c) In any action to rescind any policy or contract or to recover thereon, a misrepresentation is material if there is a causal relationship between the misrepresentation and the hazard resulting in a loss under the policy or contract.

Farmers responds that Mr. Osborne's cause of death is irrelevant because Arkansas is not a "causal state." Farmers admits that section 23-79-107(c) standing alone appears to require a causal relationship between the misrepresentation and the resulting loss. Farmers asserts that Mrs. Osborne fails to consider the meaning of subsection (c) in light of § 23-79-107 as a whole. Farmers further asserts that to accept Mrs. Osborne's view requires ignoring that *Southern Farm Bureau Life Insurance Co. v. Mary Irene Cowger*, 295 Ark. 250, 748 S.W.2d 332 (1988) overruled *National Old Line Insurance Co. v. People*, 256 Ark. 137, 506 S.W.2d 128 (1974).

In *National Old Line Insurance Co. v. People*, 256 Ark. 137, 506 S.W.2d 128 (1974), the Arkansas Supreme Court interpreted Ark. Stat. Ann. § 66-3208, which is the precursor to Ark. Code Ann. § 23-79-107, as requiring a causal relationship between the applicant's misrepresentation and the eventual loss. *Id.* at *142, 506 S.W.2d at **131. Ark. Stat. Ann. § 66-3208 read as follows:

> All statements in any application for a life or disability insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (a) Fraudulent; or
>
> (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (c) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts

>had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Fourteen years later, in *Southern Farm Bureau Life Insurance Co. v. Cowger*, 295 Ark. 250, 748 S.W.2d 332 (1988), the court overruled its decision in *People* and held that an insurer does not have to show a causal relationship between the applicant's misrepresentation and the resulting loss. *Id.* at *256, 748 S.W.2d at **336. A year after the Arkansas Supreme Court's decision in *Cowger*, the Arkansas Legislature, via Act 662 of 1989, added subsection (c) to what is now Ark. Code Ann. § 23-79-107. *See Carmichael v. Nationwide Life Ins. Co.*, 305 Ark. 549, *554, 810 S.W.2d 39, **42 (1991).

The Arkansas Legislature is presumed to be familiar with the Arkansas Supreme court's interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statute. *Rice v. Ragsdale*, __ Ark. App. __, __ S.W.3d __ (Feb. 11, 2009). Act 662 of 1989 amended Ark. Code Ann. § 23-79-107. The question, therefore, is what effect does the addition of subsection (c) have on the interpretation of Ark. Code Ann. § 23-79-107.

Arkansas statutes are to be construed to give effect to the intent of the legislature. *City of Little Rock v. Rhee*, __ Ark. __, __ S.W.3d __ (Feb. 5, 2009); *Mills v. Mills*, __ Ark. App. __, __ S.W.3d __ (March 11, 2009). Where the language of the statute is plain and unambiguous, legislative intent is determined from the ordinary meaning of the language used. *City of Little Rock v. Rhee*, __ Ark. at __, __ S.W.3d at __; *Mills v. Mills*, __ Ark. App. at __, __ S.W.3d at __. In construing the meaning of the statute, the statute

is to be construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. *City of Little Rock v. Rhee*, ___ Ark. at ___, ___ S.W.3d at ___; *Mills v. Mills*, ___ Ark. App. at ___, ___ S.W.3d at ___. The statute is construed so that no word is left void, superfluous or insignificant, and meaning and effect is given to every word in the statute, if possible. *City of Little Rock v. Rhee*, ___ Ark. at ___, ___ S.W.3d at ___; *Mills v. Mills*, ___ Ark. App. at ___, ___ S.W.3d at ___.

Indeed, the language of Ark. Code Ann. § 23-79-107 is plain and unambiguous and giving the words of the statute their plain meaning, Ark. Code Ann. § 23-79-107 requires an insurer to establish a causal relationship between the misrepresentation in the insurance application and the resulting loss. Thus, to prevail in the matter before the court, Farmers will need to establish a causal relationship between Mr. Osborne's misrepresentations in the application and the resulting loss.

Mrs. Osborne asserts that she is entitled to summary judgment because proving the necessary causal link requires expert testimony and that Farmers relies solely on the death certificate which is inadmissible. In a February 6, 2009 order, the court ruled that the death certificate was admissible. The court, therefore, declines to readdress the admissibility of the death certificate.

In the alternative, Mrs. Osborne asserts that even if the death certificate is admissible, the death certificate does not establish the cause of her husband's death and that Farmers fails to meet its burden of proving a causal relationship between the misrepresentation in the

application and the cause of death.  In Arkansas, causation is ordinarily a question of fact for the jury to decide.  *See Rose Care, Inc. v. Ross*, 91 Ark. App. 187, *205, 209 S.W.3d 393, *404 (2005).  Proximate cause may be shown by either circumstantial or direct evidence.  *Id.*; *Giles v. Sparkman Residential Care Home*, 68 Ark. App. 263, *267, 6 S.W.3d 140, **142 (1999).  The court found no cases holding that expert testimony is required to prove causation, and the Arkansas Supreme Court has held that expert testimony is not always required to establish the cause of death.  *See Sims v. State*, 258 Ark. 940, *953, 530 S.W.2d 182, **189 (1975).

Whether Mr. Osborne died as a result of his PTSD is a question of fact for the jury to decide.  Although Mr. Osborne's death certificate lists PTSD as a factor contributing to his death, Mrs. Osborne has submitted the affidavit of Dr. Charles Barg which states that PTSD was not and could not be the cause of Mr. Osborne's death.

For the reasons set forth above, both Farmers's motion and Mrs. Osborne's cross-motion for summary judgment are denied on this issue.

B.   <u>Bad Faith</u>

Farmers also asserts that it is entitled to summary judgment on Mrs. Osborne's claim of bad faith.  An insurance company commits the tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured.  *Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, *433, 208 S.W.3d 792, **801 (2005); *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, *429, 64 S.W.3d 720, **723

(2002). Bad faith has been defined as dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge. *Switzer*, 362 Ark. at *433, 208 S.W.3d at **801; *Freeman*, 347 Ark. at *429, 64 S.W.3d at **723. Mere negligence or bad judgment is insufficient so long as the insured is acting in good faith. *Switzer*, 362 Ark. at *433, 208 S.W.3d at **801; *Freeman*, 347 Ark. at *429, 64 S.W.3d at **723. Moreover, the tort of bad faith does not arise from the mere denial of a claim; rather, there must be affirmative misconduct on the part of the insurer. *Switzer*, 362 Ark. at *433, 208 S.W.3d at **801; *Freeman*, 347 Ark. at *429, 64 S.W.3d at **723.

Farmers asserts that Mrs. Osborne has failed to allege any actions rising to the level of dishonest, malicious, or oppressive conduct. Mrs. Osborne fails to address this in her response to the motion for summary judgment. In her complaint, she merely alleges that Farmers was negligent and acted in bad faith by denying coverage. She fails to proffer any evidence suggesting that Farmers's actions were dishonest, malicious, or oppressive.

The court finds that there are no genuine issues of material fact at issue regarding Mrs. Osborne's bad faith claim and that Farmers's motion for summary judgment should be granted.

## IV.  CONCLUSIONS

Farmers's motion for summary judgment, as well as, Mrs. Osborne's cross-motion for summary judgment are denied regarding Mrs. Osborne's breach of contract claim because a genuine issue of material fact exists as to whether Mr. Osborne died as a result of his

PTSD. Farmers's motion for summary judgment on Mrs. Osborne's bad faith claim is granted. Accordingly, Farmers's motion for summary judgment [Doc. No. 8] is granted in part and denied in part; Mrs. Osborne's cross-motion for summary judgment [Doc. No. 17] is denied.

     IT IS SO ORDERED this 31st day of March, 2009.

                                                                          UNITED STATES DISTRICT JUDGE